Argued November 24, 1970, affirmed February 25, 1971

FRY, *Appellant, v.* WILLAMALANE PARK &
RECREATION DISTRICT, *Respondent.*

481 P2d 648

*James R. Hargreaves*, Eugene, argued the cause for appellant. With him on the briefs were Bailey, Hoffman, Morris & Van Rysselberghe, Eugene.

*Jack Mattison*, Eugene, argued the cause for respondent. On the brief were John E. Jaqua and Jaqua, Wheatley & Gardner, Eugene.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FORT, J.

Plaintiff, as guardian ad litem for her 11-year-old son, filed this action for his injuries sustained on July 14, 1968, when he fell from an unrailed bridge con-

structed and maintained in one of its public parks by the Willamalane Park & Recreation District, a municipal corporation. The complaint alleges Willamalane at the time and place in question was acting both in a governmental and a proprietary capacity.

The complaint further alleges that within 45 days of the injury,

"* * * Pacific Indemnity Company, agent for Willamalane Park & Recreation District, obtained a written statement from Jimmy L. Fry and his mother, Shirley Fry, guardian ad litem in this action, in which the time, place and circumstances of the injuries to Jimmy L. Fry were fully set out and further, Pacific Indemnity Company, agent for Defendant Willamalane Park & Recreation District, requested and received from Shirley Fry authorization to inspect all medical records regarding Jimmy L. Fry pertaining to the injuries alleged herein.

"XIV

"That the conduct of Pacific Indemnity Company, agent for Defendant Willamalane Park & Recreation District, caused Plaintiff to believe that all notice required by law to perfect a claim against Defendant Willamalane Park & Recreation District had been given and in reliance on this belief, Plaintiff refrained and forebore from further contact with the Defendant Willamalane Park & Recreation District until after the expiration of 45 days from the date of the injuries. Thereafter the Defendant denied any responsibility arising out of the accident. That Defendant Willamalane Park & Recreation District should be estopped to assert the requirement of ORS 30.275."

The second defendant, Oregon Broiler Festival, Inc., filed an answer admitting that it

"* * * was a tenant and in possession * * * of the park * * * and had invited the plaintiff

and the general public to attend the Oregon Broiler Festival [on the day of the injury]."

Subsequently, judgment of voluntary nonsuit was entered against the defendant Oregon Broiler Festival, Inc. No appeal has been taken from that order.

Thereafter, Willamalane Park & Recreation District demurred to the complaint on the ground it did not state facts sufficient to constitute a cause of action against it. The trial court sustained the demurrer on the ground it failed to allege the giving of notice as required by ORS 30.275 (1).

Plaintiff declined to plead further and thereupon the court entered judgment upon the demurrer against her. She appeals therefrom.

Oregon Constitution, Art IV, § 24, provides:

"Provision may be made by general law, for bringing suit against the State, as to all liabilities originating after, or existing at the time of the adoption of this Constitution; but no special act authorizeing (sic) such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed."

A park and recreation district is a political subdivision of the state. *State v. James et al*, 189 Or 268, 219 P2d 756 (1950); ORS 266.010 to 266.750. In *Vendrell v. School District No. 26C et al*, 226 Or 263, 360 P2d 282 (1961), the Supreme Court said:

"Thus it is apparent that the doctrine of sovereign immunity exists in this state, not as the creation of the courts, but as a constitutional principle chosen by the people and which is subject to change only by general law. * * *

"To determine, then, that a school district in this state may incur tort liability we must find that

a provision waiving sovereign immunity has been 'made by general law.' * * *" 226 Or at 278-79.

Prior to July 1, 1968, the legal nuances enveloping the doctrine of governmental immunity in Oregon were delicately shaded between those fact situations in which recovery was allowed and those in which it was denied.[1]

In 1967, the legislature adopted Oregon Laws 1967, ch 627, p 1564 (codified as ORS 30.260 to 30.300), relating to governmental tort liability.[2] This Act, which became effective July 1, 1968, in part provided:

"Section 2. Subject to the limitations of this Act, every public body is liable for its torts and those of its officers, employes and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function. [ORS 30.265 (1).]

"* * * * *

"Section 5. (1) Every person who claims damages from a public body for or on account of any loss or injury within the scope of this Act shall cause to be presented to the governing body of the public body within 45 days after the alleged loss or

---

[1] 28 USCA, §§ 1346, 2671-78, 2680. A careful analysis of the 1967 Oregon Act is set forth in an article by Joseph T. Henke, 48 Or L Rev 95 (1968). The 1969 amendments contained in Oregon Laws 1969, ch 429, reflect many of the suggestions made by Mr. Henke. Concerning the history and development of the doctrine of Governmental Immunity in Oregon, see: Barnett, *The Distinction between Public and Private Functions in Tort Liability of Municipal Corporations in Oregon*, 11 Or L Rev 123 (1932); Phillips, *"Active Wrongdoing" and the Sovereign-Immunity Principle in Municipal Tort Liability*, 38 Or L Rev 122 (1959); Snouffer, *Sovereign Immunity, Suits Against Public Officers, and the Dead Letter of Oregon Law*, 46 Or L Rev 286 (1967); Lansing, *The King Can Do Wrong! The Oregon Tort Claims Act*, 47 Or L Rev 357 (1968).

[2] This Act generally follows the pattern of the Federal Tort Claim Act. See also, Lansing, *The King Can Do Wrong! The Oregon Tort Claims Act*, 47 Or L Rev 357 (1968).

injury a written notice stating the time, place and circumstances thereof, and the amount of compensation or other relief demanded * * *. [ORS 30.275 (1).]

"* * * * * *

"(3) *No action shall be maintained unless such notice has been given* and unless the action is commenced within one year after such notice. The time for giving such notice does not include the time, not exceeding 90 days, during which the person injured is incapacitated by the injury from giving the notice [ORS 30.275 (3)]." (Emphasis supplied.)

No claim of incapacity from the injury is made here.

ORS 30.265 (1) eliminates distinctions which might previously have been drawn between tortious acts of a public body committed in its proprietary rather than in its governmental capacity.

A principal problem presented is whether the complaint alleges facts sufficient to meet the requirements of ORS 30.275 (1), which directs written notice of the claim "to be presented to the governing body of the public body within 45 days after the alleged loss or injury."[9]

In *Newlun v. City of Portland*, 248 Or 291, 433 P2d 816 (1967), the Supreme Court considered a similar provision of the Portland City Charter, which required the notice to be filed within six months. The court said:

"* * * After the six months mentioned in the charter had expired, but within the general statutory period of limitations for tort actions, the longshoreman filed a common-law action for damages.

---

[9] See Grams v. Independent School District No. 742, 286 Minn 481, 176 NW2d 536 (1970), for a liberal interpretation of a similar statute.

The city set up the failure to comply with the charter provision as a defense, and the defense was held bad on demurrer.

"In view of the numerous legitimate governmental interests to be served by requiring early notice of accident claims against the city, this court in the past has sustained such charter provisions against the contention that the general legislative statute of limitations had occupied the field and had ousted the cities of any power to enact conditions more burdensome than those applying to such claims against private persons or corporations. *Sprague v. Astoria*, 100 Or 298, 195 P 789 (1921). Notwithstanding a modern trend toward governmental use of liability insurance to defray the expenses of such claims, we hold that under the statutes in force at the time of the commencement of the action a city government had the right to impose reasonable notice requirements as a condition precedent to the bringing of actions against the city. See cases collected in McQuillin, 18 Municipal Corporations §§ 53.152-53.155 (3d ed rev 1963). Accordingly, we adhere to our earlier decision in this respect." 248 Or at 292-93.

The court then commented on ORS 30.275 (1) in the following language:

"The matter of notice to a municipal government before commencing an action for damages was recently reviewed by the Legislative Assembly. See Oregon Laws 1967, ch 627, § 5. The new statute was not in force during the time material to the case now before us, but on its face it appears to apply to such cases in the future. In the new statute the Legislative Assembly has required the filing of a claim within 45 days of the happening of an event giving rise to a claim. In view of such a legislative decision, we cannot say that there was anything unreasonable about the Portland charter provision which required notice within six months." 248 Or at 293.

In *Sprague v. Astoria*, 100 Or 298, 195 P 789 (1921), the Oregon Supreme Court said:

"We have seen that under the provisions of said Section 129 [Astoria City Charter] plaintiff was required, within thirty days from the date of the accident, to file with the designated authority of the City of Astoria, *under oath*, a statement of her claim, setting forth the time and place of the accident, the nature thereof, and the persons present. This is jurisdictional and is a condition precedent to her right to maintain an action for the recovery of damages therefor." (Emphasis in original.) 100 Or at 309.

■ On the basis of the foregoing authorities we conclude that the giving of the notice to "the governing body" of the respondent was jurisdictional.

Two questions remain. The first: Does the minority of the boy toll the time within which the notice must be given?[④] ORS 12.160 provides that if a person "entitled to bring an action" is under 21 "the time of such disability shall not be a part of the time limited for the commencement of the action." Is the 45-day notice provision to be considered in the nature of a statute of limitations, or that of a condition precedent?

In *State ex rel Bowles v. Olson*, 175 Or 98, 151 P2d 723 (1944), the court quoted with approval at 110:

" '* * * A statute of limitations should be differentiated from conditions which are annexed to a right of action created by a statute. A statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the

---

④ See Holsman v. Village of Bigfork, 284 Minn 460, 172 NW2d 320 (1969), where a statute similar to ORS 30.275 was construed against a minor.

action within the time it fixes is an indispensable condition of the liability and of the action which it permits. The time element is an inherent element of the right so created, and the limitation of the remedy is a limitation of the right. Such a provision will control, no matter in what form the action is brought. * * *' 34 Am. Jur. 16, Limitation of Actions, § 7. And see 37 C. J. 686, Limitation of Actions, § 5E."

■ We are bound by that rule and hold that the giving of the required 45-day notice is not a statute of limitations, but that it is a condition precedent to the bringing of an action. Thus, ORS 12.160 does not apply here. 18 McQuillin, Municipal Corporations (3d ed rev 1963) 558-68, §§ 53.154-53.155. Furthermore, this statute contains its own statute of limitations of one year in addition to the condition.

■ Is a minor deprived of any constitutional right by the application to him of such a condition precedent during his minority? The Michigan Court of Appeals recently considered this point in *Reich v. State Highway Department,* 17 Mich App 619, 170 NW2d 267 (1969). The case held a statute requiring that notice of injury and intent to make claim be filed with proper governmental agency within 60 days after accident was reasonable and constituted a rational exercise of power of the legislature to create valid classifications, and thus was not unconstitutional on ground that it discriminated against minors even though they had no way of knowing their rights or responsibilities with regard to notice requirements. Unless, then, we can find in the current legislative history a contrary intent, it follows that compliance with the condition precedent is required. Otherwise its existence would be meaningless.

In 1969 the legislature amended the 1967 Act to read as follows:

ORS 30.275 (3):

"No action shall be maintained unless such notice has been given and unless the action is commenced within *two years after the date of such accident or occurrence.* The time for giving such notice does not include the time, not exceeding 90 days, during which the person injured is *unable to give the notice because of* the injury *or because of minority, incompetency or other incapacity.*" (Italicized language added by 1969 Act.)

Under the 1969 Act, therefore, the failure of a minor to give the notice required is not a bar provided it is given within 90 days after the expiration of six months.

■ Thus, we can only conclude that the legislature itself, observing that the 1967 Act did not provide for any relaxation of the rule requiring compliance with the condition precedent by a minor, determined that it was desirable to do so. Manifestly then we cannot read into the 1967 Act any intention under that statute to waive compliance with the condition precedent because of minority. Nor is there any language in the 1969 amendment indicating an intent to make the amendment retroactive. We hold that it was not.

Finally, appellant contends the District is estopped to assert the failure to give the required notice to the governing body.

There is no allegation in the complaint indicating any action whatsoever by the governing body of the District upon which to predicate a claim of estoppel. It does not even allege that the boy or his mother were directed by any officer or employe of the District to contact its insurance agent.

■ Plaintiff, relying on the language of the statute, "shall cause to be presented to the governing body," contends that she complied with the Act by giving notice to the insurance agent. We disagree. She nowhere alleges that the Pacific Indemnity Company was authorized by the governing body of the District or any of its officers or employes to receive claims for damages on its behalf. Nor does she allege that the Pacific Indemnity Company in fact presented her claim to the governing body.[⑨]

In *Heck v. City of Knoxville*, 249 Iowa 602, 88 NW2d 58 (1958), the Supreme Court of Iowa considered an identical problem. It said:

"In the absence of some proper authorization by a city of an insurance adjuster to act for it in receiving the notice 614.1 requires, assuming a city has power to take such action—a matter by no means free from doubt—we are not prepared to hold a notice given him is served upon the city. Such a decision would virtually nullify the statutory requirement of service upon the municipality.

"See in support of our conclusion Fisher v. City and County of Denver, 123 Colo. 158, 225 P.2d 828, 23 A.L.R.2d 963, and annotation 969; Town of Miami Springs v. Lasseter, Fla., 60 So.2d 774 (unsigned statement taken by insurance adjuster); Hayes v. Chicago Transit Authority, 340 Ill.App. 375, 92 N.E.2d 174, 178 (statement given investigator for defendant); O'Connell v. City of Cambridge, 258 Mass. 203, 154 N.E. 760." 249 Iowa at 609-10.

After expressly holding that the city's insurance adjuster had no authority to waive the require-

⑨ Harte v. Eagle River, 45 Wis2d 513, 173 NW2d 683 (1970); Galbreath v. City of Indianapolis, — Ind —, 255 NE2d 225 (1970). See also, Rand v. Andreatta, 60 Cal2d 846, 36 Cal Rptr 846, 389 P2d 382 (1964).

ment of notice, the court then considered the question of estoppel, which is the final contention made in the case at bar by the appellant. The Iowa court said:

"Extended discussion of the issue of estoppel is deemed unnecessary. If, as we hold, the adjuster was without power to waive the requirement of notice to the city it is clear he was also without power to create an estoppel against it. McCarthy v. City of Chicago, 312 Ill.App. 268, 38 N.E.2d 519, 524; Johnson v. City of Chisholm, 222 Minn. 179, 24 N.W.2d 232; Forseth v. City of Tacoma, 27 Wash.2d 284, 178 P.2d 357, 362; 63 C.J.S. Municipal Corporations, section 928a, all supra." 249 Iowa at 612.

For the reasons stated, then, it follows that the judgment is affirmed.